FILED
2021 Dec-10 AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **KMG BERNUTH, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 7:19-CV-01683-LSC |
| | ) |
| **RANGER ENVIRONMENTAL SERVICES, LLC,** | ) |
| | ) |
| Defendant and Counterclaim Plaintiff. | ) |

**MEMORANDUM OF OPINION**

## I. Introduction

Before the Court is Defendant, Ranger Environmental Services, LLC's ("Ranger") Motion for Summary Judgment (doc. 34), Plaintiff KMG-Bernuth, Inc.'s ("KMG") Motion to Exclude the Testimony of Roger Ball (doc. 33), and Ranger's Motion to Strike KMG's Reply Brief (doc 42). Defendant claims in its motion that the breach-of-contract claim and negligence claim are due to be dismissed as a matter of law. Plaintiff argues that because Ball's testimony is supportive only of an incorrect damages calculation it is irrelevant here. For the reasons discussed below, Defendant's Motion for Summary Judgment (doc. 34) is

due to be denied, Plaintiff's Motion to Strike (doc. 33) is due to be denied, with leave to refile at a later time, and Defendant's Motion to Strike KMG's Reply Brief (doc. 42) is due to be terminated as moot.

## II. Statement of Facts

Plaintiff KMG operates a pentachlorophenol ("penta") plant near downtown Tuscaloosa which produces and stores liquid penta, an industrial wood preservative.[1] Penta is a hazardous pesticide that must be handled with caution.

Ranger is an industrial cleaning and environmental services company with several offices across Alabama, including an office in Tuscaloosa, Alabama. KMG had hired Ranger in the past for services such as tank cleanouts and vacuuming. On May 19, 2019, a fire destroyed KMG's warehouse containing solid blocks of penta. Tuscaloosa Fire and Rescue helped extinguish the fire by using approximately 20,000 gallons of water.

At the time of the fire, Ranger was on KMG's grounds with its equipment to perform a routine tank cleanout. After the fire, KMG verbally retained Ranger on an

---

[1] The Court gleans these "facts" from the parties' submissions of "undisputed facts" and the Court's examination of the record. These are "facts" for summary judgment purposes only. Their inclusion in this Memorandum of Opinion does not signal their veracity. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

emergency basis to aid in the site clean-up. There was no written contract between the two parties for this emergency clean-up.

While Ranger was cleaning the debris from the fire using a vacuum truck, one of the Ranger field supervisors pulled the wrong lever in the truck and 1,000-2,000 gallons of contaminated water spilled onto the parking lot. The water that spilled back onto the parking lot included fire debris, flakes, chunks of melted penta, penta-contaminated water, dirt, and gravel.

Due to penta's hazardous nature and it being highly regulated, KMG was required by law to clean up the spill immediately by removing the hazardous material that was in the parking lot. To clean up the spill, KMG had the parking lot excavated and sent to Port Arthur, Texas where it was incinerated. KMG spent nearly $6.3 million to have the parking lot dug up, shipped to Texas, and replaced with new gravel.

As a result, KMG alleges that Ranger was negligent and breached its contract with KMG when Ranger spilled the contaminated water and material onto KMG's property and did not clean it up. Ranger moved for summary judgment, claiming that there was no breach of the duty of care and that KMG cannot recover its $6.3 million cleanup costs.

### III. Standard of Review

A successful summary judgment movant shows there is no genuine dispute of material fact and that judgment is due to be granted as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists, and summary judgment is not appropriate if "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2007)). At summary judgment, district courts view all evidence and draw all justifiable inferences in the nonmoving party's favor. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). Then we determine "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51 (1986).

### IV. Analysis

#### A. Contract Claim

Defendant argues that Plaintiff's "breach of contract claim . . . fails as a matter of law . . . because . . . there was no written contract between KMG and Ranger establishing a standard of care." (Doc. 34 at 18.) The Court agrees with Defendant that there is no written contract between the parties that pertains to Plaintiff's

claims. Plaintiff attempts to use a job proposal signed by Ranger in October of 2018 as evidence of a contract between the two parties. The October 2018 contract between the parties regarded work that was completed and paid for in November of 2018. (Doc. 39, Ex. 1.) As such, the Court does not find the prior written documents applicable to Ranger's clean-up efforts after the May 2019 fire.

Nevertheless, Defendant appears to argue that because there was no written contract, there can be no express contract; however, "express" is not synonymous with "written." (Doc. 34 at 19.) "A contract may be written or oral." Ala. Pattern Jury Instr. Civ. 10.07 (3d ed.). "Oral contracts are just as valid as written contracts." Ala. Pattern Jury Instr. Civ. 10.07 (3d ed.). Defendant admits that it and Plaintiff entered into an oral contract for the provision of "certain industrial cleaning and related services associated with the May 31, 2019, fire." (Doc. 8 at 5.) As such, the Court will consider the terms of the oral contract.

When a contract fails to specify that a required action be done with reasonable care, the law imposes a duty to exercise due care. *Bailey v. Liberty Mut. Ins. Co.*, 451 So. 2d 279, 281 (Ala. 1984). Even so, recovery for a breach of the imposed duty must be pursued through tort law because no express or implied contract is breached. *Id*. But Plaintiff is not asserting that Ranger breached any implied terms of reasonableness. (Doc. 37 at 27.) Instead, Plaintiff asserts that Defendant breached

the contract by failing to perform the act promised in the contract. (*Id.*) Plaintiff's allegations are like those made in *Roberts v. Pub. Cemetery of Cullman, Inc.*, 569 So. 2d 369, 372 (Ala. 1990).

In *Roberts,* the plaintiff alleged that the defendant, a cemetery, breached its contract and acted negligently when it buried her deceased husband in the wrong grave. "The trial court ruled that Roberts had to proceed under the tort claim and not under the contract claim, because there was no contract provision stating that the cemetery would use due care." *Id*. However, the Alabama Supreme Court found "there was clearly a breach of the agreement to bury the plaintiff's husband in the specific grave owned by the plaintiff; the defendant did not perform the act promised in the contract." *Id*. The court also stated that "while a defendant's failure to exercise reasonable care or to perform the act promised in a contract may give rise to an action [in tort], such failure also gives rise to an action [in contract] when there is a breach of promise." *Id*. As such, the plaintiff was entitled to present her contract claim to a jury." *Id*.

Here, like *Roberts*, there is possibly a breach of promise. KMG alleges that Ranger breached the contract and acted negligently when it spilled the contaminated water and material back onto KMG's property. Both parties agree that KMG hired Ranger to "assist in cleanup of the site after the fire." (Doc. 34 at 6.) In its Narrative

Statement of Undisputed Facts, Ranger states that the spill occurred when it "was in the process of transferring the water in its vacuum truck to another vacuum truck for transport from the site for disposal." (Doc. 35 at 8.) Ranger does not dispute that part of the contract required the transfer of the collected materials from Ranger's vacuum trucks "into containers for transfer to appropriate disposal locations." (*See* Doc. 37 at 9-10 *and* Doc. 40 at 2.) It is also undisputed that Ranger did not transfer at least part of the contaminated water to the containers. It spilled the material back onto KMG's facilities.

At a minimum, a factual dispute as to the parameters of the agreement and whether Ranger performed the acts it promised in the oral contract exists. As such, the Court does not need to determine if there is also a breach of an implied contractual duty of care. Summary judgment as to Plaintiff's contract claim is due to be denied.

### B. KMG's Ability to Recover the Amount Spent on Remediation

Defendant contends that Plaintiff cannot recover the roughly $6.3 million in cleanup costs because the costs exceed the diminution of the value of the real property caused by the contamination.[2] The Court disagrees. When a plaintiff has a

---

[2] Plaintiff does not request diminution value damages. But even if Plaintiff could have sold the property with the land in a contaminated state, the market value would likely reflect the amount needed to remediate. "Market value" is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or buy. § 33:1. J.M. Marsh, *Alabama Law of Damages* § 33:1 (6th ed.). Because penta is a hazardous chemical,

legal duty to remediate and has actually expended the costs to remediate, as was the case here, the plaintiff may recover the cost of the repair even when such costs exceed the diminution value.

As explained below, Alabama courts generally hold that when dealing with damages for injury to real property, "[t]he measure of damages . . . is generally the difference between the reasonable market value of the property before and after the injury." *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007). And "when the cost to remediate the property exceeds diminution in value because of the harm, the plaintiff is limited to the diminution in value." *Id*. The primary issue here is whether this rule controls when the plaintiff is under a legal duty to remediate and has actually remediated the property.

Upon review of the parties' briefs and Alabama case law, it appears that this issue is somewhat a matter of first impression in Alabama. Thus, the Court will attempt to predict how the Supreme Court of Alabama would decide the issue. Looking to both relative Alabama case law as well as the decisions and rationales from other jurisdictions may be helpful. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir.2002). *See also Illinois Union Ins. Co. v. NRI Const. Inc.*, 846 F.

---

regulatory agencies would likely still demand that the property be properly cleaned. As such, the value a willing buyer would pay for the property would reflect the need of the cleaning.

Supp. 2d 1366, 1374 (N.D. Ga. 2012); *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943) ("But we are of opinion that the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.").

The Alabama Supreme Court's stated rationale for using the diminution of the value of real property is not applicable here. In support of the argument for restricting recovery to the diminution value, Defendant primarily relies upon *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801–02 (Ala. 2007). In *Poffenbarger*, the defendant allowed oil to leak onto the Poffenbargers' land. To rid the property of the oil and restore the land, it would have cost the Poffenbargers $2,608,740. Yet, the property value after the oil spill was only $6,000 lower than it was before the spill. There, the Alabama Supreme Court held that the appropriate amount of damages was $6,000, noting that "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof." *Id.* at 801. However, the opinion in *Poffenbarger* is not the absolute rule. In Footnote 9, the court states, "In deciding the issue presented in this case—the measure of direct, compensatory damages generally recoverable for injury to real

property—we are not presented with, and we do not intend to address, the question whether this rule admits of any exceptions." *Id.* at 801. This Court finds that, in at least two respects, KMG's unique circumstances differ from those in *Poffenbarger* and thus lend itself to an exception.

First, unlike *Poffenbarger*, KMG had a legal duty to remediate the property. KMG operates a penta plant. Penta is a hazardous waste and is highly regulated. *See* EPA's Pentachlorophenol Fact Sheet, available at https://www.epa.gov/sites/default/files/2016-09/documents/pentachlorophenol. Ranger admits that "the materials cleaned up by Ranger after the fire were in fact indisputably hazardous and regulated as such . . . ." (Doc. 40 at 8.) As a result, when dealing with penta, the EPA has established screening levels to dictate how cleanup efforts should take place and ADEM applies those screening levels to develop site-specific cleanup levels. (Doc. 37 at 20.)

KMG claims that when Ranger spilled the wastewater that included penta-contaminated material, "removing the penta to the applicable regulatory standards and to levels safe for its employees and guests was not voluntary." (Doc. 37 at 20.) Ranger disputes this, and because KMG claims the steps it took to remediate were mandatory, there is a genuine issue of material fact. As such, assuming that the cleanup was mandatory, KMG's situation is different from that of Poffenbarger.

In *Poffenbarger*, the court did not expressly state whether the plaintiff was required to remediate. But the court did seem to indicate that the plaintiff had the option to sell the property with the oil on it for $6,000 less than its market value before the oil spill or to keep the property in its contaminated state. *See Poffenbarger*, 972 So. 2d at 801-02 (expressing worry about the plaintiff receiving a large amount of money to remediate the property and then choosing not to remediate it); *see also id.* at 793 n.4 ("The change in value from $38,628 to $32,628 was based upon the assumption that the 5 contaminated acres lost all their value, while the remainder of the acreage lost no value, as a result of the spill."). Here, according to KMG, it had no such option. KMG was faced with a hazardous chemical exposure on their property that could cause harm to their workers and guests. KGM asserts that it had a legal duty to "remov[e] the pentachlorophenol to the applicable regulatory standards and levels." (Doc. 37 at 20.) As a result, there was no option for KGM to sell the land in a contaminated state. KMG had to remediate the property before it could sell it. Thus, diminution value is not an appropriate measure of damages.

Second, KGM has already paid for the cleanup of the property. In *Poffenbarger*, the court was concerned that the plaintiff could be awarded money damages in an amount many times over the actual value of the land at issue and then "have little or no incentive to spend those moneys to repair land that, even upon full

remediation, will be worth only a small fraction of the money so expended." *Id.* at 801-02. The court chose diminution value to avoid allowing a victim to have such a "windfall." *Id.* However, here, there are no concerns about such a windfall. KGM had the property cleaned up and is now seeking reimbursement from Ranger of that cost.

Further, the *Poffenbarger* court recognized that the rule of diminution damages "is subservient to the underlying proposition for measuring damages in trespass cases: The Plaintiff is ordinarily entitled to an amount which will compensate him for actual damages sustained." *Id.* at 798. Having found that the diminution damages rationale is not applicable to this case, the Court looks to the more general damage principle that compensatory damages should be adequate to make the victim whole. *Borland v. Sanders Lead Co.*, 369 So.2d 523 (Ala.1979).

If the Court were to follow and apply *Poffenbarger*, as Ranger requests, KGM would not be made whole and would not be compensated for the actual damages sustained. The amount of actual damages sustained by KGM is calculable. It is at least the amount KGM had to pay to meet its legal duty of cleaning up the hazardous waste. None of the cases Ranger cites to this Court deal with facts like those here—where a plaintiff has a legal duty to clean up the hazardous waste on the property, cannot sell the property without doing so and has already completed the cleanup

process. As such, when applying general damages principles to the case, the Alabama Supreme Court would certainly allow KGM to recover for the amount it spent to clean up the hazardous waste.

Opinions of other jurisdictions support this conclusion. For example, Wisconsin has a general rule that mirrors Alabama. But it holds that "if the plaintiff has been ordered by the government to make the repair (or, in a pollution case, to eliminate the pollution), so that it has no choice between incurring the cost of repair and accepting the diminished value of its property, it has a right to sue for that cost." *Wisconsin Power & Light Co. v. Century Indem. Co.*, 130 F.3d 787, 793 (7th Cir. 1997).

Similarly, Arkansas created an exception to the general rule. There, the court concluded that, because the plaintiff had a legal duty to remediate and the plaintiff had no discretion in the remediation work, the costs of repairs could be used as damages since the plaintiff "had no choice but to make the repairs even if they did exceed the diminution in fair market value." *Felton Oil Co. v. Gee*, 357 Ark. 421, 431, 182 S.W.3d 72, 79 (2004).

Finally, even if KMG is initially limited to the diminution in value of the property, it would appear that KMG may still recover consequential damages resulting from Ranger's spill. In *Poffenbarger*, the court explains that their holding was "limited to the general, common-law measure of direct, compensatory damages

. . . We do not have before us the separate questions of consequential and punitive damages." *Poffenbarger*, 972 So. 2d at 802.

"[C]onsequential damages are such as are the necessary and connected effect of the tortious act, though to some extent depending upon other circumstances." § 2:5. Remote, consequential, or speculative damages, Alabama Law of Damages § 2:5 (6th ed.). *See also Nat'l Inv. Servs. Corp. v. Integrated Fund Servs., Inc.*, 85 F. App'x 779, 781 (2d Cir. 2004) (internal citations omitted) ("[C]onsequential damages are defined as damages which arise from special circumstances that make them probable, although they would be unusual apart from such circumstances."). Damages that are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. § 2:5. Remote, consequential, or speculative damages, Alabama Law of Damages § 2:5 (6th ed.) Here, all because of Ranger's alleged negligence, KMG arguably had to clean the premises to comply with federal regulations. As a result, consequential damages could be pursued.

### C. Plaintiff's Motion to Strike Expert Testimony

KMG filed a motion to exclude the expert testimony of Roger Ball, Ranger's expert. The opinion referred to in this motion does not affect the granting or denial of summary judgment. Accordingly, Plaintiff's motion is due to be denied with leave to refile at a later date. Ranger's motion to strike Plaintiff's reply is moot.

## V. Conclusion

For the reasons stated above, the Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on December 10, 2021.

_____
L. Scott Coogler
United States District Judge
206888